UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL EPHROM SHANE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:23-cv-01105 AC<br><br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 30, 2021.  Administrative Record ("AR") 168-74.[2]  The disability onset date was alleged to be August 1, 2019.  AR 168.  The application was

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF No. 8.

1  disapproved initially and on reconsideration. AR 98-101, 109-13. On October 13, 2022, ALJ
2  Serena Hong presided over the hearing on plaintiff's challenge to the disapprovals. AR 34-66
3  (transcript). Plaintiff, who appeared with counsel Harvey Sackett, was present at the hearing. AR
4  34. Shelly Cochlin, a Vocational Expert ("VE"), also testified at the hearing. Id.
5  On January 12, 2023, the ALJ found plaintiff "not disabled" under Sections 216(i) and
6  223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 17-29 (decision), 30-33 (exhibit
7  list). On April 25, 2023, the Appeals Council denied plaintiff's request for review, leaving the
8  ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision
9  and additional exhibit list). Plaintiff filed this action on June 9, 2023. ECF No. 1; see 42 U.S.C.
10 § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 7. The
11 parties' cross-motions for summary judgment, based upon the Administrative Record filed by the
12 Commissioner, have been fully briefed. ECF Nos. 9 (plaintiff's summary judgment motion), 13
13 (Commissioner's summary judgment motion), 14 (plaintiff's amended response).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1969 and is a military veteran with service dates from 1990-2010.
AR 168. Plaintiff alleged disability due to back, knee, and right shoulder pain, and general
mobility issues. AR 207. Plaintiff worked as a home health provider from 2014-2019. AR 208.
Plaintiff stated he stopped work in June of 2019 because of his conditions. AR 207. Plaintiff has
a high school education and welding experience from the military. AR 208.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is
supported by substantial evidence and if the Commissioner applied the correct legal standards."
Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the
Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews
v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a
preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such
evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

1  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the
2  record can constitute substantial evidence, only those 'reasonably drawn from the record' will
3  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).
4  Although this court cannot substitute its discretion for that of the Commissioner, the court
5  nonetheless must review the record as a whole, "weighing both the evidence that supports and the
6  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,
7  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The
8  court must consider both evidence that supports and evidence that detracts from the ALJ's
9  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

10       "The ALJ is responsible for determining credibility, resolving conflicts in medical
11  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th
12  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of
13  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,
14  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the
15  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn
16  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.
17  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on
18  evidence that the ALJ did not discuss").

19       The court will not reverse the Commissioner's decision if it is based on harmless error,
20  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
21  ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
22  2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
23  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

24                              IV.  RELEVANT LAW

25       Disability Insurance Benefits and Supplemental Security Income are available for every
26  eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff
27  is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically
28  determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

1  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The

2  Commissioner uses a five-step sequential evaluation process to determine whether an applicant is

3  disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v.

4  Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to

5  determine disability" under Title II and Title XVI).  The following summarizes the sequential

6  evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  Hill

4

v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; mild degenerative joint disease of the left hip; minimal osteoarthritis of the bilateral knees; right shoulder osteoarthritis; hearing loss (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes and scaffolds; can occasionally perform other postural maneuvers such as stooping, crouching and crawling. He can tolerate up to moderate noise, and must avoid concentrated exposure to hazards such as unprotected heights and moving machinery. He can perform occasional overhead reaching, and frequent reaching in other directions.
>
> 6. [Step 4] The ability to perform any past relevant work is expedited (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1969] and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. [Step 5, cont'd.]  The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. [Step 5, cont'd.]  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. [Step 5, cont'd.] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

AR 19-28. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 28.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by (1) improperly addressing medical opinion evidence; (2) improperly rejecting plaintiff's subjective testimony; and (3) failing to support her conclusion at Step 5 with substantial evidence. ECF No. 9-1 at 7.

### A. The Medical Evidence

Plaintiff alleges that the ALJ improperly found the medical opinion of his treating physician, Dr. Steven Fogger, to be unpersuasive. ECF No. 9-1 at 9. Pursuant to the applicable regulations, the ALJ will not "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are defined in the regulations as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

6

> finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3). In rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Id. In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).[3]

Here, Steven Fogger, M.D., completed a medical source statement on September 30, 2022. AR 868-72. Dr. Fogger opined that plaintiff's conditions included a bulging disc in the lumbar spine and lumbar degenerative disc disease, resulting in pain, numbness, and weakness in his legs and back. AR 868. Dr. Fogger noted that plaintiff had attempted physical therapy, a TENS unit, heat treatments, and steroid injections. Id. He stated that plaintiff's condition resulted in sleep disturbance, loss of interest in activities, decreased energy, and problems interacting with the public, and that the symptoms were constantly severe enough to interfere with the concentration and attention needed to perform even simple tasks. AR 868-69. Dr. Fogger opined that plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, use

---

[3] The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).

standard public transportation, or carry out routine ambulatory activities such as grocery shopping. AR 869. As to limitations, Dr. Fogger stated plaintiff could sit, stand, and walk each for less than 1 hour in an 8-hour day and would need to be able to shift positions at will. AR 870-71. He would need unscheduled breaks every 15 to 30 minutes throughout the day. AR 871. He could occasionally lift up to 10 pounds and could rarely twist or stoop. Id. He was expected to be absent more than 4 days each month because of his conditions. AR 872.

The ALJ found Dr. Fogger's medical opinion unpersuasive because it is "overly restrictive and inconsistent with the limited and conservative treatment, and inconsistent with retained strength, normal bulk and tone, lack of atrophy, and normal range of motion." AR 26. The ALJ pointed to inconsistencies between Dr. Fogger's opinion and his own treatment notes, citing an October 2021 visit with Dr. Fogger in which plaintiff's chronic low back pain was acknowledged, but plaintiff reported it was stable and denied any difficulties with starting or stopping ambulating, and normal strength and range of motion were observed. AR 26, 450-51. Additionally, the ALJ notes that plaintiff was seen as by Dr. Fogger as early as "June 15, 2015, prior to his alleged onset date, and reported pain severity of 0/10, no acute distress, and reported generally feeling "very good" [AR 652-53], which does not support the onset date Dr. Fogger found in addition to the claimant's continued work until the alleged onset date." AR 26.

Plaintiff argues that the ALJ inadequately assessed the medical opinion because the October 2021 visit in question was unrelated to plaintiff's back and mobility problems, and that most other visits since plaintiff's alleged onset date have revealed decreased range of motion, decreased muscle strength, diminished reflexes, reduced or absent sensation in the legs, and bilateral positive straight leg raise tests. ECF No. 9-1 at 11 (citing AR 300-04, 315, 470-76, 520-30). Plaintiff's citations, however, do not clearly undermine the ALJ's conclusion. For example, the record at AR 301 documents a visit on March 19, 2021, in which Dr. Fogger noted that the "main complaint today is getting a letter from PCP indicating that his low back pain is preventing him from holding a full time job" and that plaintiff's chronic low back pain was being treated with Motrin and he had not taken any other pain medications. AR 301-02. A visit from November 17, 2020 recorded 5/5 strength in the bilateral lower extremities, with normal sensation

1 and normal gait. AR 315. Defendant is correct that "conflict between treatment notes and a

2 treating provider's opinions may constitute an adequate reason to discredit the opinions of a

3 treating physician or another treating provider." Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir.

4 2014). Plaintiff's argument identifies no reversible error in the ALJ's conclusion that overall, Dr.

5 Fogger's own treatment notes do not support the extreme limitations assigned in the medical

6 opinion. The ALJ permissibly discredited Dr. Fogger because the extreme limitations assigned

7 were not consistent with his own treatment notes.

8       B.  Plaintiff's Subjective Testimony

9       Plaintiff argues the ALJ improperly rejected his subjective testimony regarding his pain

10 and impairments. Evaluating the credibility of a plaintiff's subjective testimony is a two-step

11 process. First, the ALJ must "determine whether the claimant has presented objective medical

12 evidence of an underlying impairment which could reasonably be expected to produce the pain or

13 other symptoms alleged. . . . In this analysis, the claimant is not required to show that her

14 impairment could reasonably be expected to cause the severity of the symptom she has alleged;

15 she need only show that it could reasonably have caused some degree of the symptom." Garrison

16 v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical

17 evidence of the pain or fatigue itself is not required. Id. (internal citations omitted). Second, if

18 the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony

19 by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted).

20       Here, plaintiff testified that he cannot work because he cannot stand very long or walk

21 very far, he has issues with falling, his lower back is currently out, so he spends time lying down.

22 He has a constant pain in his back even with medications. AR 47. He can help his young

23 daughter with schoolwork, take her to school and pick her up, and take her to gymnastics and pick

24 her up. AR 47. Plaintiff was working as an IHSS worker for his father-in-law until 2019. AR

25 49. He does not take medication other than over-the-counter pain relieves such as Tylenol and

26 Motrin because he wants to be mentally alert to care for his child. AR 52-53. He testified his

27 legs gave out and he hit a wall, reinjuring his shoulder, about three months prior to his hearing.

28 AR 53. He reported ringing in his ears that comes and goes for the past 12 years, but this did not

by itself stop him from working. AR 54. Plaintiff testified he picks up around the house and can microwave food but does not vacuum. AR 56.

The ALJ rejected plaintiff's subjective testimony, finding "the claimant's medically determinable impairments could have reasonably been expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the evidence." AR 22. The ALJ reasoned that plaintiff's testimony was undermined by the medical records, the objective medical evidence, and by plaintiff's history of conservative treatment. AR 22.

A plaintiff's "unexplained, or inadequately explained, failure to seek treatment" can undermine his subjective pain allegations. Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989). Moreover, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304. Here, though alleging debilitating back pain (AR 47-52), plaintiff first received related treatment in September 2020, more than one year after his alleged disability onset date. AR 23, 320-23. Plaintiff's back treatment, except for one visit, consisted of primary care outpatient visits. AR 300-02, 303-09, 310-12, 313-16, 317-19, 320-23, 449-51. The exception was a neurosurgery consultation, where the neurosurgeon, after examining plaintiff and reviewing diagnostic imaging (X-rays and MRI) of his lumbar spine, determined he was not a surgical candidate. AR 23, 310-12 (noting "[t]here appears to be considerable amount of functional overlay and histrionics" and "I do not see any surgery which can help this situation. He should continue with non-surgical management."), 303 (he "is not a surgical candidate").

The neurosurgeon recommended pain management "to try pain interventions like facet rhizotomy or facet blocks." AR 312. However, as the ALJ noted, plaintiff did not follow up with pain management. AR 22, 304 (primary care physician noting he "was referred to pain management … for which he has yet to schedule an [appointment]"); 56 (he testified he did not pursue the neurosurgeon's treatment recommendations). Instead, plaintiff treated his pain with

only nonsteroidal anti-inflammatory drugs. AR 22 (citing AR 304 (ibuprofen and naproxen), 311 (Motrin (i.e., ibuprofen)); see also AR 302 (March 2021, he "takes [M]otrin for back pain, but otherwise has not taken or done anything else for the pain").

Similarly, plaintiff had only limited and conservative treatment for his right shoulder impairment. AR 22-24. Plaintiff testified having right shoulder pain since he was in the military, and he had "re-aggravated that issue" due to a recent fall injury, and since then, he could not lift anything with the right arm. AR 53-54. During the relevant period, he first complained of right shoulder pain, due to a fall injury, at a March 2022 annual physical. AR 22, 808-12. This was more than two and a half years after his alleged disability onset date. Thereafter, four months later, plaintiff had only one related treatment visit with a primary care physician. AR 828-30. One month after that visit, plaintiff denied any myalgias (muscle pain), arthralgias (joint pain), numbness, or weakness. AR 713.

The court agrees with the commissioner that the ALJ validly discounted plaintiff's subjective complaints due to the limited and conservative treatment history. Plaintiff argues that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). While this is an accurate statement of the case law, it does not alter the result here because plaintiff does not provide any reason for failing to seek more aggressive treatment. To the extent plaintiff argues that more aggressive treatment was unavailable because surgery was not offered, the argument is unavailing; nothing in the record indicates that surgery was not offered for any reason other than it being unnecessary due to the lack of severity of plaintiff's condition. Further, plaintiff's unexplained failure to follow up with pain management undercuts any argument that more aggressive treatment was simply not available. The commissioner did not err.

### C. The ALJ's Analysis at Step Five

Plaintiff challenges the ALJ's findings at step five. First, plaintiff argues that The ALJ's RFC finding indicated that plaintiff could not reach *overhead* more than occasionally (AR 21,

11

1    emphasis added), but according to the DOT, all three of the jobs the ALJ found plaintiff could
2    perform at step five, including Routing Clerk, Garment Sorter (DOT 222.687-014), and Small
3    Parts Assembler (DOT 706.684-022), require "frequent" reaching (i.e., from one-third to two-
4    thirds of the workday).  ECF No. 15 at 12.  The Vocational Expert testified that despite the
5    reaching requirements, all three of the jobs still would be suitable even with the overhead
6    reaching limitation, stating, "I'm looking at the DOT now on just the reaching in all other
7    directions.  So, they'd still be able to do the Routing Clerk, Garment Sorter, and Small Parts
8    Assembler."  AR 64.

9        "When vocational evidence provided by a VE or VS is not consistent with information in
10   the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to
11   support a determination or decision that the individual is or is not disabled.  The adjudicator will
12   explain in the determination or decision how he or she resolved the conflict."  Social Security
13   Ruling 00-4p; Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  Ninth Circuit law allows
14   an ALJ to rely on VE testimony that contradicts the DOT, but "only insofar as the record contains
15   persuasive evidence to support the deviation."  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir.
16   1995).

17       Here, when the ALJ asked the VE if her testimony was consistent with the DOT, her
18   response was that it was, but was "supplemented with my professional experience and training."
19   AR 65.  The court agrees with defendant that there is no apparent deviation between the DOT
20   listings and the VE's testimony.  Specifically, "reach[ing] overhead" is not addressed in the DOT,
21   only "reaching."  In the Social Security context, "reaching" is defined as "extending the hands
22   and arms in any direction."  SSR 85-15, 1985 WL 56857, at *7.  The DOT does not distinguish
23   between the different types of reaching (i.e., overhead, below the waist, to the side) and the extent
24   to which each is required in a particular occupation.  See SSR 00-4p, 2000 WL 1898704 (the
25   DOT lists maximum requirements of occupations as generally performed but not the range of
26   requirements of a particular job as it is performed in specific settings).  As a result, positions
27   requiring frequent "reaching" could well involve only occasional "overhead reaching."
28       "For a difference between an expert's testimony and the Dictionary's listings to be fairly

characterized as a conflict, it must be obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). The Ninth Circuit's ruling in Gutierrez is especially relevant here. In that case, plaintiff's RFC precluded all overhead reaching with the right arm, yet the Ninth Circuit determined there was no apparent or obvious conflict in the VE testimony that she could perform the position of cashier, which required frequent reaching. Gutierrez, 844 F.3d 804. Similarly, there is no apparent conflict here. The DOT does not contain specific overhead reaching requirements, only reaching requirements in general, and the VE testified that plaintiff could manage the work as usually performed. There is accordingly no conflict between the DOT and the VE's testimony.

Plaintiff also argues that the ALJ erred because the job of small parts assembler conflicts with the ALJ's RFC limitation of tolerating "moderate" noise. ECF No. 9-1 at 11-12. Even so, the error is harmless because the two remaining jobs reasonably supported the ALJ's step five finding. The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," but has found that 25,000 jobs nationwide, though significant, was a "close call." Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014). Here, combining the two remaining occupations, the number of jobs far exceed the 25,000-figure approved in Gutierrez. AR 28, 64 (VE testifying that 60,000 routing clerk and 85,000 garment sorter jobs existed nationally). The court will not reverse for harmless error. Robbins, 466 F.3d at 885.

Plaintiff's other challenges to the ALJ's step five finding essentially reiterate his prior position that the ALJ should have found a more restrictive RFC. ECF No. 9-1 at 20-21. Plaintiff's challenge here is merely a restatement of his other arguments, it provides no independent basis for the court's review. The undersigned concludes that the ALJ did not err, and even if the ALJ did err, the error was harmless.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9), is DENIED,

2. The Commissioner's cross-motion for summary judgment (ECF No. 13), is GRANTED; and

13

3. The Clerk of the Court shall enter judgment for defendant and close this case.

DATED: September 20, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE